# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KAREN VARANO, | CASE NO. 3:14-cv-001467- GBC |
| Plaintiff, | (MAGISTRATE JUDGE COHN) |
| v. | |
| | MEMORANDUM |
| CAROLYN W. COLVIN, COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | Docs. 1, 11, 12, 13, 15 |

## MEMORANDUM

### I.  Procedural Background

On July 7, 2011, Plaintiff filed an application for disability insurance benefits ("DIB") under the Social Security Act, 42 U.S.C. §§401-433, 1382-1383 (the "Act"). (Tr. 125-26). On August 31, 2011, the Bureau of Disability Determination denied these applications (Tr. 71-83), and Plaintiff filed a request for a hearing.  (Tr. 102). On January 4, 2013, an ALJ held a hearing at which Plaintiff—who was represented by an attorney—and a vocational expert ("VE") appeared and testified. (Tr. 27-70).   On March 20, 2013, the ALJ found that Plaintiff was not disabled and not entitled to benefits. (Tr. 8-26). On May 13, 2013, Plaintiff filed a request for review with the Appeals Council (Tr. 7), which the Appeals Council denied on June 4, 2014, thereby affirming the decision of the ALJ as the "final decision" of the Commissioner. (Tr. 1-6).

On July 29, 2014, Plaintiff filed the above-captioned action pursuant to 42 U.S.C. § 405(g) to appeal the decision of the Commissioner. (Doc. 1). On November 4, 2014, the Commissioner filed an answer and administrative transcript of proceedings. (Docs. 11, 12). On December 17, 2014, Plaintiff filed a brief in support of her appeal ("Pl. Brief"). (Doc. 13). On October 1, 2014, Defendant filed a brief in response ("Def. Brief"). (Doc. 15). On July 15, 2015, the parties consented to transfer of this case to the undersigned for adjudication. (Doc. 16, 17, 18). The matter is now ripe for review.

## II.  Standard of Review

When reviewing the denial of disability benefits, the Court must determine whether substantial evidence supports the denial. *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). Substantial evidence is a deferential standard of review. *See Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). Substantial evidence "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). In other words, substantial evidence requires "more than a mere scintilla" but is "less than a preponderance." *Jesurum v. Sec'y*

*of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

### III.    Sequential Evaluation Process

To receive disability or supplemental security benefits, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A). The Act requires that a claimant for disability benefits show that he has a physical or mental impairment of such a severity that:

> He is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step evaluation process to determine if a person is eligible for disability benefits. *See* 20 C.F.R. § 404.1520; *see also Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999). If the Commissioner finds that a Plaintiff is disabled or not disabled at any point in the sequence, review does not proceed. *See* 20 C.F.R. § 404.1520.   The Commissioner must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2)

whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment from 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing"); (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and (5) whether the claimant's impairment prevents the claimant from doing any other work. *See* 20 C.F.R. §§ 404.1520, 416.920. Before moving on to step four in this process, the ALJ must also determine Plaintiff's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e).

The disability determination involves shifting burdens of proof. The claimant bears the burden of proof at steps one through four. If the claimant satisfies this burden, then the Commissioner must show at step five that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). The ultimate burden of proving disability within the meaning of the Act lies with the claimant. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.912(a).

### IV. Relevant Facts in the Record

Plaintiff was born on October 4, 1968 and was classified by the Regulations as a younger individual through the date of the ALJ decision. (Tr. 20). 20 C.F.R. § 404.1563. Plaintiff has at least a high school education and past relevant work as

an answering operator, medical receptionist, and customer service representative. (Tr. 20).

Plaintiff asserts that her impairments of psoriatic arthritis, lower back pain/spasms, depression, anxiety, fatigue, concentration issues, and migraines rendered her unable to work beginning on May 22, 2011. (Tr. 102, 125). Plaintiff had a gastric bypass surgery in 2006. (Tr. 74). She lost 120 pounds and "developed symptomatic redundant skin, which she later had removed." (Tr. 74). Plaintiff filed a previous application for benefits on October 24, 2007. (Tr. 72). A medical expert reviewed the evidence in March of 2008, and indicated that her musculoskeletal examination was normal except for crepitus in her right knee, with full range of motion, no swelling, and full strength. (Tr. 297). The medical expert concluded that she was only partially credible, as her daily activities were "not significantly limited" and she retained the ability to drive a car. (Tr. 297). Her initial claim was denied on March 14, 2008. (Tr. 72). She returned to work the next month, in April 2008, and earned $14,588.78 in 2008, $20,274.78 in 2009, $20, 380.17 in 2010, and $7,973.86 in 2011. (Tr. 129, 169). She underwent body contouring surgery in 2009. (Tr. 304). She received treatment at Bloomsburg Psychological Center from November of 2010 through March of 2011 for ADHD. (Tr. 329). She began treating with Dr. Thomas Harrington as early as February of 2009. (Tr. 378). Plaintiff quit her job on May 22, 2011. (Tr. 102, 105, 732).

On April 18, 2011, Plaintiff followed-up with Dr. Harrington for vitamin D deficiency, psoriatic arthritis, and status post gastric bypass. (Tr. 709). She reported a "good response" to prednisone and that her pain was "stable on Endocet." (Tr. 709). She reported joint pain and fatigue, with "some difficulty" in activities of daily living. (Tr. 709). She had some psoriasis on her scalp. (Tr. 709). Physical examination indicated she was "alert, healthy, no distress, well nourished and well developed" with normal pulses, "no focal motor/sensory deficits, gait normal, reflexes normal and symmetric," full range of motion in all joints, no effusion, and no synovitis. (Tr. 710). Her grip strength was 5/5 and she was not tender. (Tr. 711). Her medications were continued and she was instructed to follow-up in four months. (Tr. 711).

On May 20, 2011, Plaintiff followed-up with her psychiatrist for depression and reported she was "looking for a new job bec[ause] she does not feel comfortable with work environment with her current job." (Tr. 725). She had plans to go to Alaska that August with her mother. (Tr. 725). On June 24, 2011, Plaintiff followed-up and reported she "quit her job" and had a job interview scheduled. (Tr. 739).

On July 15, 2011, Plaintiff followed-up with Dr. Harrington, who noted a "flare" of her arthritis in her wrists, knees, and ankles. (Tr. 748). Plaintiff reported fatigue. (Tr. 748). Physical examination indicated she was "alert, healthy, no

distress, well nourished and well developed" with normal pulses, "no focal motor/sensory deficits, gait normal, reflexes normal and symmetric," full range of motion in all joints except the right ankle, synovitis in the right wrist and ankle, and tenderness in the right ankle. (Tr. 748-50). She was prescribed a short course of prednisone and referred to physical therapy. (Tr. 750).

In August of 2011, Plaintiff reported to her psychiatrist that she had not used the medication Dr. Harrington had prescribed for her. (Tr. 790). She was anxious about an upcoming unemployment hearing. (Tr. 830).

In October of 2011, Plaintiff followed-up with Dr. Haupt with a complaint of a "back pain flare" over the last "several months." (Tr. 820). She was "not working, due to harassment." (Tr. 820). Examination indicated a positive straight leg raise, symmetric leg strength and reflexes, and slightly decreased sensation. (Tr. 820). Plaintiff indicated that she could not afford physical therapy. (Tr. 820). Dr. Haupt ordered an MRI. (Tr. 820).

In November of 2011, Dr. Harrington authored a medical opinion that Plaintiff suffered disabling physical limitations, such as a complete inability to use her hands, fingers, or arms, twist, stoop, crouch, and climb, sit for more than ten minutes, and stand for more than fifteen minutes. (Tr. 772-75).

Opinion evidence also includes an opinion from reviewing physician Dr. Louis Tedesco. (Tr. 71-83). He opined that she could perform a range of light work

and perform postural movements occasionally or frequently. (Tr. 78). He explained that X-rays in August of 2010 were normal. (Tr. 74). He explained that Plaintiff's neurology examination in July of 2011 indicated only decreased range of motion in her ankle and with tenderness. (Tr. 75). He explained that she was not fully credible because of her activities of daily living and course of treatment, indicating that providers described her symptoms as "flares" and that joint imaging was normal. (Tr. 71-83).

In November of 2011, X-ray of her lumbar spine showed mild-to-moderate degenerative disc disease. (Tr. 830). In December of 2011, Plaintiff reported "pain all over," but Dr. Harrington indicated "her psoriatic arthritis is not the pain issue here." (Tr. 861). He referred her to pain management and primary care physician Dr. Haupt. (Tr. 861). Plaintiff had eight tender points and crepitus in her knees, but physical examination otherwise indicated "alert, healthy, no distress, well nourished and well developed" with normal pulses, "no focal motor/sensory deficits, gait normal, reflexes normal and symmetric," full range of motion in all joints, no effusion, no synovitis, and grip strength of 5/5. (Tr. 862-63).

On December 18, 2011, Plaintiff followed-up with Dr. Haupt. (Tr. 870). Plaintiff was frustrated and tearful. (Tr. 870). Dr. Haupt noted that Plaintiff's pain therapist recommended longacting narcotics. (Tr. 870). Examination showed only "mild" paralumbral tenderness with symmetric leg strength. (Tr. 871). Dr. Haupt

diagnosed her with a "backache," noted that an MRI was needed pending insurance approval, and prescribed Oxycontin. (Tr. 871).

On January 3, 2012, lumbar spine MRI indicated "degenerative disk disease to include annular fissuring/annular tears in the midline at each level. Focal disk protrusions are seen at L4-5 and L5-S1 and some disk material contacting the transiting nerve roots at each of these levels cannot be excluded. Further correlation with the distribution of clinical symptoms is recommended" (Tr. 882). On January 8, 2012, Dr. Haupt observed positive straight leg raise. (Tr. 884). Plaintiff could not tolerate Oxycontin, but morphine was tolerated. (Tr. 884). She reported "some relief" with medication but still needed Percocet for breakthrough pain. (Tr. 884). She was referred to pain therapy. (Tr. 884). On January 17, 2012, Plaintiff reported to her psychiatrist that she was "still collecting unemployment." (Tr. 891).

On January 26, 2012, Plaintiff presented to Dr. Shaik Ahmed, M.D., for a pain management evaluation. (Tr. 906). Plaintiff reported lower back pain that radiated to her buttocks. (Tr. 902). Examination indicated pain and tenderness, but "intact" gait, negative straight leg raise, 5/5 strength throughout the lower extremities, and normal neurologic examination. (Tr. 905). He performed an epidural steroid injection and instructed her to "remain active as tolerated." (Tr. 906). After the injection, she reported "0" pain. (Tr. 915).

On January 31, 2012, Plaintiff followed-up with Dr. Haupt and reported her injection did not benefit her. (Tr. 919). She reported "fair pain control" with morphine and using Percocet for breakthrough pain. (Tr. 919). In May of 2012, Plaintiff reported back spasm, but examination was normal except for positive straight leg raise. (Tr. 935). Plaintiff could not afford physical therapy because she was going on a cruise. (Tr. 935). Plaintiff planned to go to Florida and then to the Caribbean for one week. (Tr. 943).

On May 8, 2012, Plaintiff followed-up with Dr. Ahmed for a pain management follow-up. (Tr. 952). She reported "80% good temporary pain relief lasting 6 weeks." (Tr. 953). She was not stretching and reported "improved activity levels, decreased use of pain medications, and overall improvement in quality of life after receiving the injection." (Tr. 953). She rated her pain as 3/10. (Tr. 953). Straight leg raise caused pain, but Dr. Ahmed questioned if this was "muscle strain vs. true positive." (Tr. 954). Her gait and strength were normal. (Tr. 955). Dr. Ahmed performed another injection and provided a stretching brochure. (Tr. 955). After the injection, she rated her pain at "0" (Tr. 964).

The same day, Plaintiff had a neurology consultation for demyelination with "concerns that she may have" multiple sclerosis. (Tr. 970). She reported numbness and tingling of arm, hands, feet, and fingers with spasms, which had started five months earlier. (Tr. 970). She reported memory loss, inattention, slow information

processing, and fatigue. (Tr. 970). The neurologist observed on examination that she was "alert, oriented to time, place, person" with "normal recent memory, normal remote memory, normal attention span, normal concentration, normal language and normal fund of knowledge." (Tr. 973). Plaintiff had normal reflexes and coordination. (Tr. 974). Her gait was "wide based and stiff" and she had spasticity in her lower extremities, but sensation was normal, she had no atrophy, and motor strength was otherwise "normal." (Tr. 974). Sensation was normal. (Tr. 974). The neurologist ordered an MRI and instructed Plaintiff to "remain active" with "regular to moderate exercise." (Tr. 975). MRI of the brain was subsequently normal with "no findings suggestive of multiple sclerosis." (Tr. 988).

On June 28, 2012, Plaintiff reported fatigue, joint pain, and muscle spasm to Dr. Haupt. (Tr. 991). Examination was normal and Dr. Haupt noted that Plaintiff was "stable with MS contin at present." (Tr. 991).

On July 8, 2012, Plaintiff followed-up with her neurologist. (Tr. 1001). She reported "no weakness" and examination indicated "muscle strength is 5/5 and symmetrical throughout in all major muscle groups in all four extremities. Good bulk and tone in all four extremities." (Tr. 1001). Her gait appeared abnormal and she was using a cane. (Tr. 1001). Notes indicate she was "awake, alert, oriented x 3, able to answer questions appropriately, cooperative, follows commands, no

signs of an aphasia, abstract reasoning appears intact. Recent and remote memory are intact." (Tr. 1001). MRI of the cervical spine was ordered. (Tr. 1001).

On August 9, 2012, Plaintiff had a pain management follow-up with Dr. Ahmed. (Tr. 1014). Plaintiff was exercising but not stretching. (Tr. 1015). She reported that she received less reduction in pain from her second epidural because she "over did it" on her cruise. (Tr. 1015). Plaintiff's gait and strength with intact, reflexes were not elicited, she had pain with range of motion, and moderate tenderness. (Tr. 1016). Dr. Ahmed performed another injection, instructed Plaintiff to remain active, and recommended yoga. (Tr. 1017). She denied numbness and tingling in her extremities. (Tr. 1027). After the injection her pain was "0." (Tr. 1026).

MRI of the cervical spine showed "small" central disc protrusions with "no abnormal cord signal or enhancement to suggest multiple sclerosis." (Tr. 1036). A DXA scan for osteoporosis showed "low/moderate" fracture risk which did not meet the "criteria for treatment." (Tr. 1042).

On August 31, 2012, Plaintiff reported less pain control with medications to Dr. Haupt. (Tr. 1044). She ambulated with a cane, but examination was otherwise normal. (Tr. 1044). Dr. Haupt prescribed Lyrica. (Tr. 1044).

On September 14, 2012, Plaintiff followed-up with Dr. Harrington. (Tr. 1065). Physical examination indicated she was "alert, healthy, no distress, well

nourished and well developed" with normal pulses, "no focal motor/sensory deficits, gait normal, reflexes normal and symmetric," full range of motion in all joints, no effusion, and no synovitis. (Tr. 1064-65). Her grip strength was 5/5 and she was not tender. (Tr. 1065).

On November 2, 2012, Plaintiff reported pain in her hands, ankle, knee, hip, back, upper arm, and tooth to Dr. Haupt. (Tr. 1078). Examination indicated positive straight leg raise. (Tr. 1078). She had symmetric leg strength and ambulated with a cane. (Tr. 1078). Dr. Haupt prescribed Gababentin and noted the "ultimate goal [was] to get off narcotic pain [medication]." (Tr. 1079). On November 13, 2012, Dr. Harrington observed tenderness in one of Plaintiff's fingers and rotator cuff syndrome in her right shoulder. (Tr. 1087). He gave her an injection in her shoulder and prescribed a course of prednisone. (Tr. 1088).

No subsequent medical records were submitted to the ALJ.[1]

At the hearing before the ALJ, she testified to pain in her ankles, knees, hips, and hands. (Tr. 42). She reported difficulty handling objects and has a tendency to drop things. (Tr. 42-44). She testified that she had severe muscle spasms in her

---

[1] Plaintiff submitted additional evidence to the Appeals Council, but does not argue that it is new and material evidence that supports a remand under sentence six of 42 U.S.C. §405(g) or that it was omitted for good cause. *See Szubak v. Secretary of Health and Human Servs.*, 745 F.2d 831, 833 (3d Cir. 1984); *Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001) (Opinion could have obtained prior to ALJ decision, so was not omitted for good cause). Thus, the Court has not considered these records. (Tr. 1097-1100).

back and stabbing pain in her back after sitting or standing. (Tr. 44). She testified that she had problems lifting her left leg and ambulating with burning pain in her legs. (Tr. 44). She testified that she had to use a cane when she left her house, but spent most of the day in her bed. (Tr. 55). She testified that she cannot drive, sit, or walk for more than ten minutes and can only stand for five minutes. (Tr. 56, 62). She testified she cannot lift more than five pounds. (Tr. 58).

On March 20, 2013, the ALJ issued the decision. (Tr. 22). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 22, 2011, the alleged onset date. (Tr. 13). At step two, the ALJ found that Plaintiff's Psoriatic Arthritis, Degenerative Disc Disease of the Lumbar and Cervical Spines; and Major Depressive Disorder were medically determinable and severe. (Tr. 13). At step three, the ALJ found that Plaintiff did not meet or equal a Listing. (Tr. 14). The ALJ found that Plaintiff had the RFC to:

> [P]erform sedentary work as defined in 20 CFR 404.1567(a) with the ability to lift and carry up to 10 pounds. She can stand and/or walk up to two hours out of an eight-hour workday and can sit up to eight hours out of an eight-hour workday; but requires a sit/stand option at will. The claimant can occasionally kneel, crouch, crawl, climb ramps/stairs, balance, and stoop, but must avoid climbing ladders, ropes, or scaffolds. She must avoid concentrated exposure to high humidity. The claimant can understand, retain, and follow simple job instructions and perform one to two step tasks; perform simple, routine, repetitive work in a stable environment; make simple decisions; carry out very short and simple instructions; maintain regular attendance and be punctual; maintain socially appropriate behavior; ask simple questions and accept instructions; and sustain an ordinary routine without special supervision.

(Tr. 17). A step four, the ALJ found that Plaintiff could not perform past relevant work. (Tr. 20). At step five, in accordance with the VE testimony, the ALJ found that Plaintiff could perform other work in the national economy. (Tr. 21). Consequently, the ALJ found that Plaintiff was not disabled and not entitled to benefits. (Tr. 21).

## V.     Plaintiff Allegations of Error

### A. The ALJ's assignment of weight to the medical opinions

Plaintiff asserts that the ALJ erred in assigning more weight to Dr. Tedesco's opinion that Dr. Harrington's opinion. (Pl. Brief at 13-14). In support of this argument, she notes only that Dr. Harrington was a treating source while Dr. Tedesco was a reviewing source. (Pl. Brief at 13-14).

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). Opinions can come from various sources, including treating physicians, examining physicians, and non-examining physicians. 20 C.F.R. §§ 404.1527(c)(1)-(2). "Regardless of its source, [the Commissioner] will evaluate every medical opinion we receive." 20 C.F.R. § 404.1527(c). If a treating source is "well-supported by medically acceptable

clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." 20 C.F.R. § 404.1527(c)(2).

When the Commissioner does not give a treating "opinion controlling weight under paragraph (c)(2) of this section, [the Commissioner] consider[s] all of the following factors in deciding the weight we give to any medical opinion." 20 C.F.R. § 404.1527(c). Specifically, "[w]hen [the Commissioner does] not give the treating source's opinion controlling weight, [the Commissioner] appl[ies] the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of [Section 404.1527], as well as the factors in paragraphs (c)(3) through (c)(6) of [Section 404.1527] in determining the weight to give the opinion." 20 C.F.R. § 404.1527(c)(2).

Section 404.1527(c)(2)(i) provides that, "the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion." *Id.* Section 404.1527(c)(2)(ii) provides that "more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion. We will look at the treatment the source has provided and at the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories." *Id.* Section 404.1527(c)(1) provides that, "[g]enerally, [the

Commissioner] give[s] more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you." *Id.*

Pursuant to 20 C.F.R. §404.1527(c)(3), "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion" and "[t]he better an explanation a source provides for an opinion, the more weight we will give that opinion." Pursuant to 20 C.F.R. §404.1527(c)(4), "the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion." Pursuant to 20 C.F.R. §404.1527(c)(5), more weight may be assigned to specialists, and 20 C.F.R. §404.1527(c)(6) allows consideration of other factors which "tend to support or contradict the opinion."

A non-treating opinion may be assigned more weight than a treating opinion. *See* 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i) (state agency physicians are "highly qualified" and "experts" in social security disability evaluation.). The Regulations provide that, "[w]hen the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if *it* were from a nontreating source." 20 C.F.R. § 404.1527(c)(2)(i) (emphasis added). Thus, when a treating source opinion is not given controlling weight, it does not trump all opinions from a nontreating source. It merely receives more weight than it

otherwise would if it were authored by a non-treating physician. However, if the examining or non-examining opinion is better supported, more consistent with evidence, or authored by a specialist, then it may be entitled to greater weight than a treating opinion. As the Third Circuit explained in *Jones v. Sullivan*, 954 F.2d 125 (3d Cir. 1991):

> Jones next argues that the law of this Circuit required the ALJ to adopt the judgment of Jones's treating physicians, who opined that Jones's illnesses prevent him from maintaining gainful employment and cause him severe pain. Jones claims that the ALJ substituted the ALJ's own lay observations of Jones's condition for the findings of Jones's treating physicians, thus violating *Frankenfield v. Bowen*, 861 F.2d 405 (3d Cir.1988). In *Frankenfield*, we established that, in the absence of contradictory medical evidence, an ALJ in a social security disability case must accept the medical judgment of a treating physician. However, the opinions offered by Jones's treating physicians were conclusory and unsupported by the medical evidence, and failed to explain why ailments that had plagued Jones for decades did not incapacitate him until 1987. Further, these opinions were not uncontradicted. After Jones applied for reconsideration of the initial rejection of his claim, two physicians in the state agency evaluated the medical findings of Jones's treating physicians and concluded that those findings did not reveal any condition that would preclude gainful employment. In light of such conflicting and internally contradictory evidence, the ALJ correctly determined that the opinions of Jones's treating physicians were not controlling. *See, e.g.*, *Wright v. Sullivan*, 900 F.2d 675, 683 (3d Cir.1990); *Newhouse v. Heckler*, 753 F.2d 283, 286 (3d Cir.1985).

*Id*. at 128-29. *See also Morales v. Apfel*, 225 F.3d 310, 317-18 (3d Cir. 2000) (An ALJ "may choose whom to credit" when a treating physician opinion conflicts with a non-treating physician opinion, and may "reject 'a treating physician's opinion outright…on the basis of contradictory medical evidence.'") (quoting

*Plummer,* 186 F.3d at 429); *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("Although treating and examining physician opinions often deserve more weight than the opinions of doctors who review records, *see, e.g.,* 20 C.F.R. § 404.1527(d)(1)-(2)*,* '[t]he law is clear ... that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity'") (quoting *Brown v. Astrue*, 649 F.3d 193, 197 n. 2 (3d Cir.2011)).

Here, the ALJ explained that Dr. Tedesco's opinion was entitled to more weight than Dr. Harrington's, writing that:

> As for the opinion evidence, little weight is assigned to the November 2011 arthritis medical source statement completed by the claimant's rheumatologist, Thomas Harrington, M.D., in which the doctor reports that the claimant is only able to lift and carry less than 10 pounds on a rare basis, and stand, walk, and sit for less than two hours each out of an eight-hour workday. The doctor further suggests that the claimant requires the use of an assistive device for standing and/or walking. Dr. Harrington also declares that the claimant could never engage in any postural activities or use either upper extremity for any part of the workday. Finally, the doctor opines that the claimant would be off task for more than 25% of the workday and would be absent from work more than four days per month as a result of her impairments or treatment (Exhibit 14F). This treating source opinion is not given controlling weight because it is not well-supported by accepted clinical and diagnostic techniques and is inconsistent with the other substantial evidence in the record, including Dr. Harrington's own clinical findings upon examination, as described above.
>
> In further support of the established residual functional capacity, the undersigned notes that the residual functional capacity conclusions reached by the State agency consultants also support a finding of 'not disabled.' Specifically, in August 20ll, State agency medical consultant, Louis Tedesco, M.D. determined that from an exertional standpoint, the claimant is able to perform light work activity with

frequent balancing and stooping, but only occasional climbing, kneeling, crouching, and crawling.

(Tr. 18-20). The ALJ had earlier explained that "physical examinations have demonstrated only mildly positive straight leg raise testing, tenderness in the lumbar region, and painful range of motion with normal strength, symmetrical reflexes, and a nonantalgic gait (Exhibits 20F). In addition, although the claimant appeared at the hearing and at some doctor appointments with a cane, the undersigned notes that this was not prescribed by her doctors." (Tr. 18-20).

These are accurate characterizations of the record and appropriate reasons to assign more weight to Dr. Tedesco's opinion than Dr. Harrington's opinion. *See Jones v. Sullivan*, 954 F.2d 125 (3d Cir. 1991); *Morales v. Apfel*, 225 F.3d 310, 317-18 (3d Cir. 2000); *Plummer,* 186 F.3d at 429); *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("Although treating and examining physician opinions often deserve more weight than the opinions of doctors who review records, *see, e.g.,* 20 C.F.R. § 404.1527(d)(1)-(2), '[t]he law is clear ... that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity'") (quoting *Brown v. Astrue*, 649 F.3d 193, 197 n. 2 (3d Cir.2011)). Substantial evidence "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

Here, a reasonable mind could accept the above-described evidence as adequate. Aside from positive straight leg raises, only mild or slight findings were noted on objective examination. *Supra.* Specifically, Dr. Harrington's opinion was authored in November of 2011. (Tr. 772-75). He opined to extreme limitations, such as a complete inability to use her hands, fingers, or arms, twist, stoop, crouch, and climb, sit for more than ten minutes, and stand for more than fifteen minutes. (Tr. 772-75). However, in April of 2011, he observed no musculoskeletal deficits, as she was "alert, healthy, no distress, well nourished and well developed" with normal pulses, "no focal motor/sensory deficits, gait normal, reflexes normal and symmetric," full range of motion in all joints, no effusion, and no synovitis. (Tr. 710). Her grip strength was 5/5 and she was not tender. (Tr. 711). In July of 2011, he observed symptoms only of tenderness, synovitis, and decreased range of motion in her right ankle and synovitis in her right wrist. (Tr. 748-50). These abnormalities do not explain a complete inability to perform postural movements, use her left hand, fingers, or arm, or sit for more than fifteen minutes. (Tr. 772-75). Thus, the ALJ accurately concluded that this opinion was not well-supported by Dr. Harrington's treatment record. Records subsequent to his opinion showed sporadic positive straight leg raise, but Dr. Ahmed questioned if it was "true positive." *Supra.* Thus, the ALJ accurately concluded that this opinion was inconsistent with other record evidence. The Court finds no merit to this allegation

of error.

The Regulations require the ALJ to "consider" each factor in assigning weight to the medical opinions. 20 C.F.R. §404.1527(c). However, "there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision." SSR 06-3p. *See also Phillips v. Barnhart,* 91 Fed.Appx. 775, 780 (3d Cir. 2004) ("the ALJ's mere failure to cite specific evidence does not establish that the ALJ failed to consider it") (quoting *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir.1998)). Thus, an ALJ must provide some written explanation for the assignment of weight, but does not need to cite each factor considered in the analysis. *See Francis v. Comm'r Soc. Sec. Admin.*, 414 Fed.Appx. 802, 804-05 (6th Cir. 2011) ("Although the regulations instruct an ALJ to consider these factors, they expressly require only that the ALJ's decision include "good reasons ... for the weight ... give[n] [to the] treating source's opinion"—not an exhaustive factor-by-factor analysis. Here, the ALJ acknowledged Dr. Wakham's role as Francis's "treating family osteopath." In assigning no weight to his opinion, the ALJ cited the opinion's inconsistency with the objective medical evidence, Francis's conservative treatment and daily activities, and the assessments of Francis's other physicians. Procedurally, the regulations require no more.") (internal citations omitted).

If explanation allows meaningful judicial review, it suffices. *Christ the King*

*Manor, Inc. v. Sec'y U.S. Dep't of Health & Human Servs.,* 730 F.3d 291, 305 (3d Cir. 2013) (Court may "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned"); *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (ALJ is not required to "use particular language or adhere to a particular format in conducting his analysis" and instead must only "ensure that there is sufficient development of the record and explanation of findings to permit meaningful review."); *Hur v. Comm'r Soc Sec.*, 94 F. App'x130, 133(3d Cir. 2004) ("There is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record").

Here, as discussed above, the ALJ's explanation sufficed for meaningful review. *Supra.* The ALJ provided specific explanations supported in the record and cited to specific treatment notes that contradicted the opinions. *Supra.* Thus, the Court finds no merit to this allegation of error.

## B. Credibility Assessment

Plaintiff asserts that the ALJ erred in assessing her credibility. Plaintiff cites her course of treatment. (Pl. Brief at 9-10). However, a claimant's course of treatment is only one aspect of the credibility assessment. When making a credibility finding, "the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s)…that could reasonably

be expected to produce the individual's pain or other symptoms." SSR 96-7P.

Then:

> [T]he adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

SSR 96-7P; *see also* 20 C.F.R. § 416.929. "Under this evaluation, a variety of factors are considered, such as: (1) 'objective medical evidence,' (2) 'daily activities,' (3) 'location, duration, frequency and intensity,' (4) medication prescribed, including its effectiveness and side effects, (5) treatment, and (6) other measures to relieve pain." *Daniello v. Colvin*, CIV. 12-1023-GMS-MPT, 2013 WL 2405442 (D. Del. June 3, 2013) (citing 20 C.F.R. § 404.1529(c)). "One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record." SSR 96-7p.

The ALJ properly relied on the objective evidence, as supported by Dr. Tedesco's opinion, to conclude that it rendered her less than fully credible. (Tr. 18-20); SSR 96-7p. The ALJ is also entitled to rely on observations during the hearing, SSR 96-7p, and noted that Plaintiff was able to sit throughout the hearing. (Tr. 18-20). Plaintiff asserts that the ALJ should have recorded this observation. (Pl. Brief at 11). However, Plaintiff does not dispute that she was, in fact, able to

sit during the hearing. (Pl. Brief at 11). The ALJ properly concluded that this contradicted Plaintiff's claim that she cannot sit for more than ten minutes, which renders her less than fully credible. SSR 96-7p.

Plaintiff challenges the ALJ's reliance on her receipt of unemployment compensation. (Pl. Brief at 10). However, this is a proper reason to reject her credibility, particularly when it was only one of several factors that suggested she was less than fully credible. *See Myers v. Barnhart*, 57 F. App'x 990, 997 (3d Cir. 2003) (It is "entirely proper for the ALJ to consider that [Plaintiff's] receipt of unemployment benefits was inconsistent with a claim of disability during the same period."); *Freeman v. Colvin*, 4:14-CV-01581, 2015 WL 3739077, at *7 (M.D. Pa. June 15, 2015) ("Freeman relies on a memorandum entitled 'Receipt of Unemployment Insurance Benefits by Claimant Applying for Disability Benefits' which states that the '[r]eceipt of unemployment benefits does not preclude the receipt of Social Security Benefits.' ECF No. 13–1. Memorandum Dated Nov. 15, 2006 from Frank A. Cristaudo, Chief Administrative Law Judge. However, the same memorandum also states that '[t]he receipt of unemployment benefits is only one of many factors that must be considered in determining whether the claimant is disabled.' (Id.). It is therefore entirely proper for the ALJ to consider the receipt of UC benefits as inconsistent with a claim of disability during the same period. See *Meyers v. Barnhart*, 57 F. App'x 990, 991 (3d Cir.2003); *see e.g., Johnson v.*

*Chater*, 108 F.3d 178, 180 (8th Cir.1997) (application for unemployment compensation benefits can adversely affect a claimant's credibility because of admission of ability to work requirement for unemployment benefits). Accordingly, the Court finds that the ALJ considered the receipt of UC in a permissible manner, as a non-dispositive factor to assess Freeman's credibility."); *Thompson v. Colvin*, 3:13-CV-1311, 2015 WL 1198103, at *22 (M.D. Pa. Mar. 16, 2015).

Plaintiff does not address ALJ's observation that she voluntarily left work due to work relationships, not disability. (Tr. 18, 725, 739). This is a proper reason to find Plaintiff less than fully credible. *See*, *e.g.*, *Kelley v. Barnhart*, 372 F.3d 958, 961 (8th Cir. 2004) (ALJ may consider "that a claimant left work for reasons other than a medical condition"); *Faria v. Astrue*, 5:10CV00076, 2011 WL 3715089, at *4 (W.D. Va. Aug. 24, 2011) *report and recommendation adopted*, 5:10CV00076, 2011 WL 4351602 (W.D. Va. Sept. 14, 2011) ("[T]he ALJ specifically noted that the plaintiff's claim of an inability to perform any work since February 2006 was contradicted by the fact that she stopped working that month due only to a layoff, not due to any identified medical condition, and that her claim was equally inconsistent with her collection of unemployment and certified readiness and ability to work from March through November 2006…Thus, the ALJ thoroughly considered the record as a whole and gave valid reasons for his finding that the

plaintiff's statements about her inability to work and about the intensity, persistence limiting effects of her symptoms not to be 'credible.'"); SSR 96-7p (ALJ may consider work history).

Plaintiff asserts that the ALJ erred in failing to consider the third-party function report, but the ALJ wrote that "the undersigned has also considered the function report completed by Carol Barsh, the claimant's mother, when establishing a residual functional capacity." (Tr. 20). Plaintiff also made inconsistent claims, as she reported to Dr. Haupt (who provided long acting narcotics) that her injection provided her with no benefit within one week, but reported to Dr. Ahmed (who provided injections) that her injection provided "80% good temporary pain relief lasting 6 weeks." (Tr. 919, 953).

Substantial evidence "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Here, a reasonable mind could accept the above-described evidence as adequate.

The ALJ did not err in characterizing Plaintiff's course of treatment. The ALJ wrote that "[t]he claimant also testified that she is unable to afford the co-pays required to undergo recommended aquatic therapy. Yet, the undersigned notes that

the claimant has taken more than one vacation since being out work, including a trip to Alaska and a Caribbean cruise." (Tr. 19). This is an accurate characterization of the record, as Plaintiff reported to treating providers that she could not afford physical therapy because she was going on a cruise. (Tr. 935). This is an appropriate reason to discount Plaintiff's credibility. *See* SSR 96-7p.

Moreover, even assuming the ALJ erred in characterizing Plaintiff's course of treatment, this error was harmless. *See Brumbaugh v. Colvin*, 3:14-CV-888, 2014 WL 5325346, at *16 (M.D. Pa. Oct. 20, 2014) ("[W]hether the error is harmless depends on whether the other reasons cited by the ALJ in support of [the] credibility determination provide substantial evidence for [the] decision."). Plaintiff does not seriously challenge the ALJ's other, multiple reasons for concluding that she was not fully credible. (Pl. Brief). The Court finds no merit to this allegation of error.

## C. Step 2

Plaintiff asserts that the ALJ erred in assessing her headaches, neck pain, and shoulder pain at step two. (Pl. Brief at 15). However, Plaintiff does not assert any limitations arising out of those impairments. (Pl. Brief at 15).

At step two, the social security regulations contemplate that the administrative law judge first consider whether there are any medically determinable impairments and then determine whether any of the medically

determinable impairments are "severe." 20 C.F.R. § 404.1529.  An impairment is

"severe" if it significantly limits an individual's ability to perform basic work

activities.  *Id.* § 404.1521;  Basic work activities are the abilities and aptitudes

necessary to do most jobs, such as walking, standing, sitting, lifting, pushing,

seeing, hearing, speaking, and remembering.  *Id.*  An impairment or combination

of impairments is "not severe" when medical and other evidence establish only a

slight abnormality or a combination of slight abnormalities that would have no

more than a minimal effect on an individual ability to work.  *Id.* § 416.921; Social

Security Rulings 85-28, 96-3p and 96-4p.

The determination of whether a claimant has any medically determinable,

severe impairments is a threshold test. 20 C.F.R. § 404.1520(c). If a claimant has

no impairment or combination of impairments which significantly limit the

claimant's physical or mental abilities to perform basic work activities, the

claimant is "not disabled" and the evaluation process ends at step two. *Id.*  If a

claimant has any severe impairments, the evaluation process continues.. *Id.* §

404.1520(d)-(g).  Both severe and non-severe medically determinable impairments

are considered at step three, in the RFC analysis, and at steps four and five.

*Christenson v. Astrue*, Civil No. 10-1192, slip op. at 12 (M.D. Pa. May 18, 2011)

(Muir, J.); *Little v. Astrue*, Civil No. 10-1626, slip op. at 19-21 (M.D. Pa.

September 14, 2011) (Kosik, J.); *Crayton v. Astrue,* Civil No. 10-1265, slip op. at

32-35 (M.D. Pa. September 27, 2011) (Caputo, J.); *Shannon v. Astrue*, Civil No.

11-289, slip op. at 39-41 (M.D. Pa. April 11, 2012) (Rambo, J.); *Bell v. Colvin*,

Civil No. 12-634, slip op. at 23-24 (M.D. Pa. Dec. 23, 2013) (Nealon, J.); 20

C.F.R. §§ 404.1523, 404.1545(a)(2). A failure to find a medical condition severe at

step two will not render a decision defective if some other medical condition was

found severe at step two and the non-severe impairment was properly considered at

subsequent steps.

Thus, a claimant must still establish that a finding of non-severe was not

harmless. *See Rutherford v. Barnhart*, 399 F.3d 546, 552-53 (3d Cir. 2005)

(Remand is not appropriate where ALJ's error does not affect the ultimate

outcome); 28 U.S.C.A. § 2111 ("[T]he court shall give judgment after an

examination of the record without regard to errors or defects which do not affect

the substantial rights of the parties."). Here, Plaintiff has failed to allege any

limitation stemming from this alleged error, so remand is not appropriate.

## D. Listing

Plaintiff asserts the ALJ erred in finding that she did not meet a Listing 1.04.

(Pl. Brief at 7). The Supreme Court explained in *Sullivan v. Zebley*, 493 U.S. 521

(1990) that:

> The listings set out at 20 CFR pt. 404, subpt. P, App. 1…are
> descriptions of various physical and mental illnesses and
> abnormalities, most of which are categorized by the body system they
> affect. Each impairment is defined in terms of several specific medical

signs, symptoms, or laboratory test results. For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify. See Social Security Ruling (SSR) 83–19, Dept. of Health and Human Services Rulings 90 (Jan.1983) ("An impairment 'meets' a listed condition ... only when it manifests the specific findings described in the set of medical criteria for that listed impairment." "The level of severity in any particular listing section is depicted by the *given set* of findings and not by the degree of severity of any single medical finding—no matter to what extent that finding may exceed the listed value"). *Id.,* at 91. (Emphasis in original.)

*Id*. at 529-31. The Court noted that the criteria to meet Listings is more strict than other steps of the analysis because they establish presumptive disability:

The Secretary explicitly has set the medical criteria defining the listed impairments at a higher level of severity than the statutory standard. The listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity, not just "substantial gainful activity." See 20 CFR § 416.925(a) (1989) (purpose of listings is to describe impairments "severe enough to prevent a person from doing any gainful activity"); SSR 83–19, at 90 (listings define "medical conditions which ordinarily prevent an individual from engaging in any gainful activity"). The reason for this difference between the listings' level of severity and the statutory standard is that, for adults, the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary. That is, if an adult is not actually working and his impairment matches or is equivalent to a listed impairment, he is presumed unable to work and is awarded benefits without a determination whether he actually can perform his own prior work or other work. See *Yuckert,* 482 U.S., at 141, 107 S.Ct., at 2291 (if an adult's impairment "meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is conclusively presumed to be disabling, the evaluation proceeds to the fourth step"); *id.,* at 153, 107 S.Ct., at 2297 (the listings "streamlin[e] the decision process by identifying those claimants whose medical impairments are so severe

that it is likely they would be found disabled regardless of their vocational background"); *Bowen v. City of New York,* 476 U.S. 467, 471, 106 S.Ct. 2022, 2025, 90 L.Ed.2d 462 (1986) ("If a claimant's condition meets or equals the listed impairments, he is conclusively presumed to be disabled and entitled to benefits"; if not, "the process moves to the fourth step"); *Campbell,* 461 U.S., at 460, 103 S.Ct., at 1953 ("The regulations recognize that certain impairments are so severe that they prevent a person from pursuing any gainful work.... A claimant who establishes that he suffers from one of these impairments will be considered disabled without further inquiry.... If a claimant suffers from a less severe impairment, the Secretary must determine whether the claimant retains the ability to [work]").

*Id.* at 532-33. To establish presumptive disability pursuant to a Listing, a claimant must establish all of the required criteria. *See* 20 C.F.R. §§ 404.1525(c)(3), 416.925(c)(3); *Benway v. Colvin*, 3:11-CV-02233, 2013 WL 3989149, at *15 (M.D. Pa. Aug. 2, 2013) ("a claimant has the burden of proving that his or her severe impairment or impairments meet or equal a listed impairment") (citing *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); 20 C.F.R. § 1520(d) and § 416.920(d)); 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require"); 42 U.S.C.A. § 1382c(a)(3)(H)(i) ("In making determinations with respect to disability under [the SSI] subchapter, the provisions of sections 421(h), 421(k), and 423(d)(5) shall apply in the same manner as they apply to determinations of disability under subchapter II of this chapter").

Plaintiff asserts that the ALJ erred in failing to find that she met Listing 1.04. However, Plaintiff concedes that Listing 1.04 requires "atrophy with associated muscle weakness or muscle weakness." (Pl. Brief at 7). Plaintiff only references muscle weakness once, citing to her May 8, 2012 treatment record. (Pl. Brief at 7). However, that examination indicated spasticity, but no atrophy and no weakness. (Tr. 974). The ALJ properly cited to evidence of intact muscle strength. (Tr. 18-20). A reasonable mind could accept this evidence as adequate to support the ALJ's Listing assessment, and the Court finds no merit to this allegation of error. *See* Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004) ( "*Burnett* does not require the ALJ to use particular language or adhere to a particular format" and "the ALJ's decision, read as a whole, illustrates that the ALJ considered the appropriate factors in reaching the conclusion that Jones did not meet the requirements of any listing"). Moreover, the undersigned has independently reviewed the record, and concluded that there is no significant evidence of muscle weakness. (Tr. 749, 847, 862-63, 954, 974, 999-1001, 1016, 1065). Thus, remand would not be appropriate. *See Rutherford v. Barnhart*, 399 F.3d 546, 552-53 (3d Cir. 2005) (Remand is not appropriate where ALJ's error does not affect the ultimate outcome); 28 U.S.C.A. § 2111 ("[T]he court shall give judgment after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties.").

## VII.    Conclusion

Therefore, the Court finds that the ALJ made the required specific findings of fact in determining whether Plaintiff met the criteria for disability, and the findings were supported by substantial evidence. 42 U.S.C. §§ 405(g), 1382c; *Brown*, 845 F.2d at 1213; *Johnson*, 529 F.3d at 200; *Pierce*, 487 U.S. at 552; *Hartranft*, 181 F.3d at 360; *Plummer*, 186 F.3d at 427; *Jones*, 364 F.3d at 503. Substantial evidence is less than a preponderance of the evidence, but more than a mere scintilla of evidence. It does not mean a large or significant amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Thus, if a reasonable mind might accept the relevant evidence as adequate to support the conclusion reached by the Acting Commissioner, then the Acting Commissioner's determination is supported by substantial evidence and stands. *Monsour Med. Ctr.*, 806 F.2d at 1190. Here, a reasonable mind might accept the relevant evidence as adequate. Accordingly, the Court will affirm the decision of the Commissioner pursuant to 42 U.S.C. § 405(g).

An appropriate Order in accordance with this Memorandum will follow.

Dated: October 9, 2015                                     *s/Gerald B. Cohn*
                                                                          GERALD B. COHN
                                                                          UNITED STATES MAGISTRATE JUDGE